| 114 | 401 |
| 160 | 315 |

No. 13,251.

## HODGIN ET AL. *v.* BRYANT.

SALE.—*Personal Property.*—*Collusion to Defraud.*—*Representations of Solvency.* —One who, by collusion with another, obtains the property of a third person, by having a colorable sale, made to the co-conspirator, who is falsely represented to be solvent, and whose note is taken by the seller, is liable for the purchase-price of the property, the seller having tendered back the worthless note.

SAME.—*Statute of Frauds.*—In such case there is more than an oral representation as to another's solvency; there is an attempt by fraud to obtain property by foisting upon the owner a worthless note; and hence the case is not within the statute of frauds. *Cook* v. *Churchman,* 104 Ind. 141, distinguished.

From the Hamilton Circuit Court.

*R. Collins, A. F. Shirts* and *G. Shirts,* for appellants.
*J. Stafford* and *T. E. Boyd,* for appellee.

ELLIOTT, J.—The material allégations of the complaint are these : That the appellee was the owner of a horse of the value of fifty dollars ; that about two weeks prior to the 1st day of May, 1885, Hodgin endeavored to buy the horse, but no sale was then effected ; that on that day Hodgin and Thomas falsely and fraudulently represented that Thomas would buy the horse, and that Thomas was financially responsi ble, and would pay the agreed price ; that the representations were made to induce the appellee to sell the horse to Thomas ; that appellee, believing the representations to be true, did sell the horse, as he believed, to Thomas, received part of the agreed price, and for the unpaid part accepted the promissory note of Thomas ; that, before bringing this action, he tendered back the note ; that the defendants at the time of the purchase of the horse had entered into a fraudulent conspiracy to defraud the plaintiff; · that Thomas and Hodgin pretended that the former was purchasing the horse for him-

self, when, in fact, he was purchasing it for Hodgin; that the plaintiff believed Thomas to be solvent, when in truth and in fact, as Hodgin knew, Thomas was notoriously insolvent; that immediately after Thomas obtained possession of the horse he delivered it to Hodgin, and pretended that he had sold it to him, when in fact no such sale was made, as Hodgin was the actual purchaser from the plaintiff; that Thomas paid no part of the consideration for the horse, but it was paid by Hodgin, nor did he receive any consideration for the pretended sale to Hodgin.

We hold the complaint good. If, as the complaint alleges and the demurrer admits, Hodgin colluded with Thomas for the fraudulent purpose of obtaining the plaintiff's property and defrauding him out of part of the purchase-price by having a colorable sale made to an insolvent man, both he and Thomas are liable to the extent of the unpaid price of the horse. If Hodgin was the real buyer, and resorted to a fraudulent artifice to palm off upon the plaintiff a worthless note, both he and his fellow-conspirator are liable.

There was more than an oral representation as to the solvency of Thomas, so that the case is not within the statute of frauds. There was a formed design to obtain the horse for Hodgin by the fraudulent pretence that Thomas was the buyer, and to evade payment by the device of causing the plaintiff to take the note of an insolvent person. It is not the case of one representing the solvency of another, but the case of one seeking by fraud to obtain property by foisting upon another a worthless note.

The case before us is unlike *Cook v. Churchman*, 104 Ind. 141, for here the conspiracy was formed for the express purpose of securing the property for the party who made the false representations.

The case at bar belongs to the class thus referred to in the case cited: "If a case should arise in which it appeared that two or more persons entered into a conspiracy, the common purpose of which was to defraud another of his money or

goods, or that some were engaged to assist others in accomplishing a fraudulent or illegal act, then whatever shams or tricks may appear to have been resorted to, the court will deal with the case as the facts require. *Breedlove v. Bundy,* 96 Ind. 319." This action is not to recover for loss resulting from fraudulent representations as to the solvency of Thomas, but to recover the unpaid price of property obtained from the plaintiff by fraud, and held by the party for whose benefit the fraud was perpetrated. He can not, in justice, be allowed to profit by his fraud to the injury of one who trusted him, and whose property he acquired by fraud.

Judgment affirmed.

Filed April 24, 1888.