## FIREBAUGH ET AL. *v.* TROUGH.

[No. 8,402.    Filed December 23, 1914.]

1. FRAUD.—*What Constitutes.*—*Proof.*—Fraud must be predicated on material existing facts and be alleged and proven, but it need not be established by any particular kind or class of evidence. p. 427.

2. FRAUD.—*Determining Existence.*—*Conduct.*—*Words.*—Conduct as well as words, and the particular facts and circumstances of each case, must be carefully weighed and considered along with the relation and situation of the parties to a transaction in determining whether fraud was perpetrated. p. 427.

3. EXCHANGE OF PROPERTY.—*Fraud.*—*Duty to Disclose Information.*—Where the parties to an alleged fraudulent exchange of property had been close personal friends for many years, under

circumstances inspiring great confidence on the part of plaintiff, who was a widow, and she was not in the same relative position in the transaction with defendants, who were aware of her situation and the confidence imposed in them by her, defendants were under a duty to act in the utmost good faith and to give to plaintiff all the information possessed by them which might in any material way influence her in the transaction. p. 428.

4. EXCHANGE OF PROPERTY.—*Fraud.*—*Matter of Opinion.*—Representations made by defendants in an exchange of property with plaintiff were not mere trade talk, but constituted actionable fraud, where defendants, knowing of plaintiff's confidence in them and that she had a general knowledge of and was favorably impressed with an addition to a distant city, procured certain lots therein which were undesirable and could be purchased at a low price, and then informed the plaintiff that the lots were desirable and that they were worth $3,100, which sum defendants claimed to have paid for them, thereby inducing plaintiff to exchange her property for such lots. p. 428.

5. HUSBAND AND WIFE.—*Fraud.*—*Liability of Husband.*—Where a husband aided his wife in arranging a fraudulent exchange of property with plaintiff, and participated in the profits of the transaction, so as to make it legally impossible to separate either from the essential and controlling facts of the case, the court was warranted in rendering judgment for damages against both. p. 430.

From Porter Circuit Court; *Willis C. McMahan,* Judge.

Action by Viola Trough against Mary Florence Firebaugh and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Grant Crumpacker, William Daly* and *D. E. Kelly,* for appellants.

*A. D. Bartholomew,* for appellee.

FELT, J.—This is a suit by appellee against appellants to recover damages for fraud, alleged to have been perpetrated in an exchange of real estate. Issues were formed by a general denial to the complaint. The cause was tried by the court and upon request a special finding of facts was made and conclusions of law stated thereon. The conclusions were in favor of the plaintiff, appellee, and judgment was rendered in her favor against both defendants for $1,550. Each

of the appellants severally and separately excepted to the conclusions of law and prayed an appeal, which was granted. The appellants have separately assigned error on each conclusion of law.

As far as material to a decision of the questions presented by the briefs, the substance of the findings is as follows: On February 21, 1910, appellee was the owner in fee simple of certain real estate in the city of Valparaiso, Porter County, Indiana, which was encumbered by mortgage for $1,650; that appellee is a widow with six children, her husband having died in May, 1908; that appellants are husband and wife and they and appellee, and her husband in his lifetime, were friends and visited each other; that appellee's husband before his death expressed confidence in the integrity and honesty of appellant, George E. Firebaugh; that appellee is a woman of more than ordinary intelligence, but inexperienced and unaccustomed to business transactions; that appellant, George E. Firebaugh, is a man of experience and more than ordinary business ability; that appellants knew appellee was unfamiliar with business methods and not accustomed to transacting business; that after the death of her husband appellee visited appellants several times and they visited her, and were all members of the same church; that appellee had confidence in the honesty and integrity of appellants and after the death of her husband sought and obtained the advice and assistance of said George E. Firebaugh on certain matters of business; that one A. T. Collison, a brother of said Mary Florence, lived in Bartlesville, Oklahoma, and was in partnership with one Smysor; that they had an addition of lots to said city, known as Capitol Hill Addition; that the lots were of different sizes and values, some were connected with sewers and sidewalks and were nearer the business portion of the city than others; that the value of the lots on February 21, 1910, was from $200 to $750, each; that appellee had some correspondence with said Collison and Smysor

about exchanging some real estate; that in January, 1910, appellants were going to Texas to look at some real estate and invited appellee to accompany them and look at their land with a view of trading for it and also to visit Bartlesville; that they made the trip and stopped two days in said city and stayed at the house of said Collison, located in Capitol Hill Addition; that while in Bartlesville appellee looked over the addition with a view of trading her farm in Porter County, Indiana, for property in said city; that said Smysor came to Indiana and looked at appellee's farm and later on appellee again went to said city to look at property and, as a result of her visit, exchanged her farm for houses and lots in Bartlesville, six of which were in Capitol Hill Addition; that by reason of her investigations appellee believed property in the addition was desirable and valuable and would continue to rise in value; that before trading for the property appellant George E. advised her to go to Bartlesville and examine the property which was offered in exchange for her farm, herself; that after making the trade appellee only had left, her property in Valparaiso, and she offered it for sale with a view to moving to Bartlesville; that prior to February 21, 1910, she was offered for the property, $3,100 cash; that said Mary Florence Firebaugh purchased a lot in Capitol Hill Addition for $850, after she and her husband returned home; that while in Bartlesville Mary Florence learned that some of the lots in the addition could be purchased at a very low price and she thereafter communicated with her brother and learned that some of them could be purchased for $250, and she then wrote him to send her a deed for three of such lots; that she thereupon began negotiations with appellee to trade the lots for her property in Valparaiso; that she told her the lots were of the value of $3,100 and that she had paid that amount for them; that she had not paid $3,100 therefor and the lots were not worth $3,100; that at the time she made the statements, Mary Florence knew they

were false; that she knew she would have to pay only $750 for the three lots for which she had bargained and that they were not worth more than that amount; that said Mary Florence made the false statements aforesaid as to the cost and value of the lots for the purpose of inducing the plaintiff to exchange her house and lot in Porter County for the lots; that appellee relied on said statements as to the cost and value of the lots and believed them to be true and was thereby induced to enter into a contract to exchange her house and lot, worth $3,100, for the four lots in Bartlesville, which were worth $1,550 and no more; that when the representations were made Mary Florence had not received a deed for the three lots, and on February 19, 1910, she or her husband telegraphed said Collison requesting him to send the numbers of the three lots and to send the deed therefor to the bank at Kouts, Indiana, all of which was done as requested; that at the time the representations were made Mary Florence and her husband had in their possession a map or plat of the addition on which all the lots were numbered and on which the selling price of each lot was marked, which plat showed that the three lots which were so represented to have cost $750, and each to be worth that amount, were marked and offered for sale for $250 each; that appellee was pleased with Bartlesville and was favorably impressed with the idea of having all her property located there and intended to move to that place and believed that property purchased there at its true value would become more valuable; that on February 21, 1910, appellant, Mary Florence, telephoned appellee and sought to make an appointment with her and was told she had to go to Chicago and they should come on the 23rd; that by some misunderstanding appellants came to Valparaiso on February 21, and not finding appellee at home waited until she returned in the evening; that in the meantime appellants called on their lawyer and made an appointment for 7:30 o'clock p. m.; that on her return from Chicago ap-

pellee was met at the depot by said Mary Florence and
they went direct to the lawyer's office where, in the pres-
ence of appellant, George E., further negotiations were
carried on and a contract was prepared and entered into
by which appellee's property in Valparaiso was to be ex-
changed on even terms for the four lots in Capitol Hill
Addition, and by which appellee was to assign notes suffi-
cient in amount to pay the mortgage on her property in
Valparaiso; that appellee did not, when she executed said
contract, nor at any time prior thereto, know the location
or value of the lots and had no means of knowing their
location or value, and relied wholly upon the statements
of Mary Florence, as to the value of the lots and believed
her statements to be true and had she at that time known
the value of the lots she would not have executed said con-
tract; that appellants had said plat with them at the time
they were in said office and when the contract was made
and intentionally concealed the fact from appellee and they
then knew that if they showed the plat to appellee, or if she
in any way saw the same, she would not enter into the con-
tract or consummate the trade; that appellants caused a
deed for the four lots to be made to appellee and appellee
executed her deed to them, according to the contract; that
the negotiations leading up to the trade were conducted
by Mary Florence Firebaugh, and George E. Firebaugh
was not present when they were going on, except as above
stated, and he did not make any representations to appel-
lee with reference to the character of the lands in Bartles-
ville, or as to their location and value, nor did he mis
represent the lots to appellee.

On the foregoing finding the court stated its conclusions,
(1) that appellee recover of appellants $1,550; (2) that
she has a lien on the real estate in Valparaiso, describing
it, to secure the payment of said amount and that the
lien be foreclosed and the real estate sold to pay the amount
due her.

The propositions mainly relied on by appellants are, (1) that the alleged false representations are mere statements of opinions as to value; (2) that appellee had as good an opportunity as appellants to know the value of the property in Oklahoma; (3) that there is no finding of fact connecting appellant George E. Firebaugh, with the fraud, if any is shown, and that inasmuch as the judgment is against both appellants, if not good as against both it must be reversed.

On the other hand appellee alleges that under all the circumstances of the case shown by the finding of facts, the representations made were of facts and not mere trade talk or opinions as to value; that a relation of trust and confidence is shown, which put upon appellants the duty of revealing to appellee all material facts in their knowledge affecting the transaction; that they failed so to do, and fraudulently made false statements of price and value, knowing that appellee was ignorant of the value of the property, and intentionally withheld from her information concerning the location and value of the lots and concealed from her the plat in their possession at the time the contract was entered into for the fraudulent purpose of inducing appellee to enter into the contract, well knowing at the time that she trusted and confided in their friendship, honesty and truthfulness, and accepted as facts and relied upon the statements made in regard to said lots; that she would not have entered into said contract but for her confidence in them and reliance on the truthfulness of the representations made concerning the value of said lots.

The law looks through form to substance. Fraud must be predicated on material existing facts and be alleged and proven, but it need not be established by any particular kind or class of evidence. Conduct as well as words must be considered along with the relation and situation of the parties to the transaction. In applying the law, the particular facts and circum-

stances of each case must be carefully weighed and considered in the light of the relation and situation of the parties to the transaction.

In the case at bar, without repeating the findings, we hold that the facts found were sufficient to show that the parties did not deal at arm's length or occupy the same relative position in the transaction and that appellee was justified in imposing confidence in the honesty, fairness and truthfulness of appellants in making the deal; that appellants knew that appellee imposed confidence in them and relied upon their representations and conduct; that thereby the duty was imposed on appellants to act in the utmost good faith and to give to appellee all the information possessed by them which might in any material way influence her in the transaction. While the foregoing rule is frequently invoked where a fiduciary relation exists, its application is not limited to such cases. It is frequently applied where the facts show a relation of trust and confidence justifying one in relying thereon, and where the party occupying the superior position has abused such confidence and dependence and used it to gain an unfair advantage over the party relying thereon. *Ray* v. *Baker* (1905), 165 Ind. 74, 86, 74 N. E. 619; *Givan* v. *Masterson* (1899), 152 Ind. 127, 131, 51 N. E. 237; *Calahan* v. *Dunker* (1912), 51 Ind. App. 436, 444, 99 N. E. 1021; *Basye* v. *Basye* (1899), 152 Ind. 172, 175, 52 N. E. 797; *Morgan* v. *Dinges* (1888), 23 Neb. 271, 36 N. W. 544, 8 Am. St. 121.

In the case at bar the findings show that appellee had general knowledge of the city of Bartlesville and of Capitol Hill Addition thereto and was favorably impressed therewith and desired to. make that city her future home. Appellants also had this information. By the known confidence appellee had imposed in them, they were enabled to use her general information and favorable impression of the city and addition to influence her to

close the deal on their representations. Appellee had no knowledge whatever of the particular lots she was to get, but with her confidence in appellants, she naturally accepted them as being in the location and situation which made them of the value appellant Mary Florence represented them to be. Coupled with her confidence in appellants, appellee's knowledge of the addition, instead of protecting her against fraud or misrepresentation, made her the easy victim of a cunningly devised and fraudulent plan to betray her confidence by substituting lots of much less value and of unfavorable location for those with a situation and location which would give them the value represented. Appellee was in no better situation than she would have been had she never seen the city or addition. The facts show that the statements and concealments made were intended to induce appellee to enter into the contract; that she did not know the value of the lots and her opportunity of knowing was not equal to that of appellants; that appellant Mary Florence assumed to know the value and stated it as a fact intending thereby to deceive appellee; that appellant George E. Firebaugh, while not making any fraudulent representations by words, coöperated with his wife with full knowledge of the confidence imposed in him by appellee and intentionally concealed from her the plat, well knowing that if she had the information it afforded as to the number and price of the lots she would not have entered into the contract; that he signed the contract and with his wife received the deed and notes which were transferred by appellee to cover the amount of the mortgage on the Valparaiso property.

These facts show that appellant Mary Florence assumed to know the value of the Oklahoma lots and that her opportunity of knowing the value of the lots in question was superior to that of appellee; that she stated the price paid and the value, not as mere trade talk, or opinion, but as a fact intended to induce appellee to act thereon, well know-

ing that appellee was relying upon the truthfulness of her representations and that she did not know or have the means of ascertaining the value of the lots she (appellant) proposed to convey to her; that her statements were false and known to her to be false at the time they were made and were made with the fraudulent intent of defrauding appellee out of her property; that appellee relied thereon and believed them to be true and was thereby induced to make the trade to her damage. Such findings are clearly sufficient to sustain the conclusions of law against appellant Mary Florence Firebaugh. *New* v. *Jackson* (1912), 50 Ind. App. 120, 129, 95 N. E. 328; *Judy* v. *Jester* (1913), 53 Ind. App. 74, 86, 100 N. E. 15; *Culley* v. *Jones* (1905), 164 Ind. 168, 171, 73 N. E. 94; *Manley* v. *Felty* (1896), 146 Ind. 194, 198, 45 N. E. 74; *Ray* v. *Baker, supra,* 87; *Bolds* v. *Woods* (1894), 9 Ind. App. 657, 664, 36 N. E. 933; *Harris* v. *McMurray* (1864), 23 Ind. 9.

The facts found show that the confidential relation extended to both appellants and that they both fraudulently concealed from appellee material facts within their knowledge, well knowing that appellee would not make the trade if she had such information. These facts coupled with the further findings which show the joint execution of the contract, the mutual coöperation and marital relations of appellants, and their participation in the profits of the transaction, so relate each of the appellants to the deal as to make it legally impossible to separate either from the essential and controlling facts of the case, and fully warranted the court in stating its conclusions of law against both. *Wolfe* v. *Pugh* (1885), 101 Ind. 293, 305; *Hodgin* v. *Bryant* (1888), 114 Ind. 401, 16 N. E. 815; *Hauss* v. *Niblack* (1881), 80 Ind. 407, 413.

The court did not err in its conclusions of law. Judgment affirmed.

NOTE.—Reported in 107 N. E. 301. As to false representations in sales of real estate, see 2 Am. Dec. 77. Upon the question of

false statement as to cost, selling, or market price of property, or as to offers therefor as fraud, see 325 L. R. A. (N. S.) 175. As to elements essential to sustain action for deceit, see 29 L. Ed. U. S. 740; 40 L. Ed. U. S. 543. See, also, under (1) 20 Cyc. 97, 120; (2) 20 Cyc. 116, 122; (3) 20 Cyc. 15; 17 Cyc. 841; (4) 20 Cyc. 53, 54; 17 Cyc. 841 ; (5) 21 Cyc. 1578.