## GODWIN v. DeMotte.

[No. 9,249.   Filed May 9, 1917.]

1. FRAUD.—*Statements of Value.—Opinion.*—Generally, representations as to values and statements pertaining to the future will not support an action for fraud, although under certain circumstances such statements may, be actionable.   p. 400.

2. APPEAL.—*Review.—Jury Questions.—Fraud.—Misrepresentations.*—Whether representations as to value, or statements pertaining to the future, are affirmations of fact, is for the court or jury to determine, and the conclusion reached will not be disturbed on appeal, if there is any evidence to sustain it. p. 400.

3. FRAUD.—*Representations as to Value.—Confidential Relation. —Duty to Disclose Information.*—The rule that a purchaser has no right to rely upon the representations of a vendor as to the quality of the property where he has a reasonable opportunity for examination does not apply where a confidential relation exists between the parties, in which case any misrepresentation by the party confided in as to material matter constituting an inducement to the other party, and by which an undue advantage is taken, is fraud against which equity will grant relief.   p. 401.

4. APPEAL. — *Review. — Verdict. — Conclusiveness. — Fraud. — Waiver of Right.*—Where there is evidence to sustain the charge that the entire transaction whereby plaintiff was induced to part with his property was fraudulent, and the trial court made a general finding in his favor, the court on appeal will not hold that any act alleged to have been induced by defendant or his agent in furtherance of their unlawful purpose served as a waiver of any of plaintiff's prior rights, or as a ratification of any prior wrong.   p. 401.

5. FRAUD.—*Award of Damages.—Evidence.—Sufficiency.*—In an action to set aside a deed and for damages on account of fraud, although there was no proof as to any damage to the real estate or that defendant appropriated certain personal property

Godwin *v.* DeMotte—64 Ind. App. 394.

belonging to plaintiff, as alleged in the complaint, the evidence is sufficient to sustain a finding that plaintiff was damaged $600 where it appears that at the time the deed was executed defendant received from plaintiff $900 in personalty to discharge certain mortgages on the land conveyed, that the mortgages were never satisfied, and that at the time of a subsequent conveyance of land by plaintiff to defendant, the latter, through fraud, secured from plaintiff personal property valued at $200.   p. 402.

6.   FRAUD.— *Evidence.— Inference from Circumstances.*— While fraud is a question of fact and cannot be inferred as a matter of law, nor is it ever presumed, yet the fact of fraud may be inferred from circumstances and need not be proven by direct or positive evidence.   p. 403.

7.   FRAUD.—*Evidence.—Mental Weakness.—Experience.*—In an action to set aside a deed alleged to have been obtained by fraud, the fact that plaintiff was a young man of limited experience and of less than ordinary mental capacity and will power might properly have been considered in determining the question of fraud.   p. 403.

8.   FRAUD.—*Finding.—Evidence.—Sufficiency.*—A finding by the trial court, in an action to have a deed set aside, that the conveyance was obtained by fraud is conclusive on appeal, where there was some evidence to support every material allegation of the complaint.   p. 404.

9.   PRINCIPAL AND AGENT.—*Acts of Agent.—Liability of Principal.*—In an action to have a deed set aside for fraud, defendant, having admitted that another acted as his agent, was bound by the acts of such agent done within the real and apparent scope of his authority.   p. 404.

10.   EVIDENCE.—*Failure to Produce Witness.—Presumption.*— Where a party has it within his power to produce a witness, presumably favorably disposed toward him, to explain a transaction, and fails to do so, the presumption is that the testimony would be unfavorable to him.   p. 405.

11.   JUDGMENT.—*Motion in Arrest of Judgment.—Time for Filing.*—A motion in arrest of judgment, to be available, must be filed before the rendition of judgment.   p. 406.

From Pike Circuit Court; *John L. Bretz,* Judge.

Action by Eugene P. DeMotte against Byron Godwin. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*A. H. Taylor* and *E. P. Richardson,* for appellant.

*Frank Ely* and *H. W. Carpenter,* for appellee.

BATMAN, J.—Appellee instituted this action against appellant to set aside a deed and to recover damages on account of fraudulent representations made by appellant and his agent, one Charles Rose, in a certain real estate transaction. There were three paragraphs of complaint. The first was dismissed before answer, and the allegations of the second are not necessary for the determination of the appeal. So much of the third paragraph as is essential for the determination of the questions before us is as follows: That on April 12, 1913, appellee was the owner in fee simple of a farm in Pike county, Indiana, of 58¾ acres (describing it); that on said date appellant was the owner in fee simple of a farm in said county of seventy-nine acres (describing it); that on said date appellee's said farm was encumbered by a mortgage of $900, and appellant's said farm was encumbered by a mortgage of $3,000; that on said date appellee was a youth of twenty-one years, inexperienced in business transactions, and unacquainted with business methods, while appellant and his said agent were men of mature years, of large experience in business affairs, and fully acquainted with business methods; that appellee had been acquainted with appellant and his said agent all of his life and for a long time prior to said date had been on very friendly terms with them; that at such time appellee knew of the business qualifications and experience of appellant and of his agent, and believed them to be honest and upright and of strict business integrity. That prior to April 12, 1913, appellant and his agent, well knowing the youth, inexperience, and want of knowledge of business methods on the part of appellee and well knowing that appellee believed that they were his friends and that he relied upon and trusted them, availed themselves of such trust and the confidence he had in their integrity and conspired together for the purpose of defrauding ap-

pellee and thereby to obtain from him his farm and other property then belonging to him; that in pursuance of this conspiracy appellant and his agent represented to appellee that appellant's farm was very valuable land; that the same was worth $80 per acre and could be sold for that price; that they knew two or three men of that neighborhood who would pay that price for the farm, and that they could sell it at any time for such price; that prior to said date they were with appellee frequently and on each occasion made such representations to him. That on said date appellant and his agent proposed to appellee to exchange farms on the basis of $80 per acre for appellant's land, and $40 per acre for appellee's land; that if the exchange were made on such basis they would immediately find a buyer who would take the land so transferred to appellee and pay therefor the sum of $80 per acre; that appellant represented to appellee that, because of his friendship for him, he would rather exchange farms with him and then procure the buyer at such price than to sell the land himself for such price; that appellee's farm was the size he wanted, and that as a friend to appellee he would exchange farms and immediately thereafter sell the land conveyed to appellee for $80 per acre or more. That at the time appellee was not well acquainted with land values, but appellant and his agent were well acquainted therewith and made the representations in order to induce and persuade appellee to exchange farms with appellant for the purpose of committing a fraud on appellee, well knowing that such representations were false; that appellant's farm was not worth $80 per acre, and that they had no purchaser who would pay such price therefor. That appellee believed appellant and his agent were his friends; that they were reputable men of good business judgment; that said representations so made were true; and, believing and relying on such

statements and representations, agreed with appellant to exchange farms on said basis, and deeds were made on such date to effect the exchange; that to adjust the difference in values on the agreed basis of exchange, appellee assumed the $3,000 mortgage on the land conveyed to him, executed to appellant an additional mortgage thereon for $1,000, and transferred to appellant over $970 worth of horses, mules, cattle, and harness to discharge a mortgage of $900 on the land which he conveyed to appellant; that appellant did not at any time thereafter procure or furnish appellee with a purchaser who would pay $80 per acre for said land and made no effort to do so. That immediately after said conveyances appellant and his agent, in further pursuance of said conspiracy, represented to appellee that his creditors were incensed and enraged because he had made the exchange of the land and were intending to combine together, press all their claims, and thereby to break him up and place him in bankruptcy; that he had been guilty of a fraud on his creditors and that they were going to institute criminal proceedings against him on that account; that he had better leave home and get out of the state before "the sun arose again," and that if he did not do so he would be arrested and imprisoned; that the best way for him to escape prosecution and punishment was for him to deed said farm back to appellant and thereby keep his creditors from proving that he had tried to defraud them and stop any such prosecution; that appellant and his said agent then solicited a reconveyance of said land, promised to protect him, and stated to him that he could come back to Indiana as soon as the trouble quieted down, and appellant would then give back his property; that appellant and his agent made these statements for the purpose of frightening appellee and consummating their said conspiracy, well knowing at the time that the same were

false. That appellee, still believing that appellant and his agent were his friends and were trying to assist him as they pretended, believed said false representations to be true, and so believing became frightened, and by reason thereof, on July 22, 1913, reconveyed said farm to appellant, left the state, as appellant and his said agent had advised him to do; that he received no consideration whatever for the reconveyance; that when appellee left the state he had personal property, consisting of horses, mules, cows, hogs, and poultry, amounting to about $500, which appellant took into his possession and now has the same. That a short time after appellee had left the state he discovered that his creditors were not pressing their claims or attempting to prosecute him for any crime; that appellant and his said agent had falsely represented the facts in order to deceive and defraud him; that he thereupon demanded of appellant that he reconvey to him his farm, so conveyed on April 12, 1913, for which he had received no consideration whatever, and that he deliver to him said personal property; that the conveyance was obtained from him by fraud perpetrated by appellant and his agent, conspiring together for such purpose to his damage in the sum of $600. The prayer is that said deed executed by appellee to appellant on April 12, 1913, be declared void and ordered cancelled, and that appellee have judgment for $600 and costs.

Appellant answered by general denial. Trial was had by the court, and on September 30, 1914, judgment was rendered in favor of appellee, setting aside said deed, quieting appellee's title, and for $600 damages and costs. Appellant filed a motion for a new trial, which was overruled on November 20, 1914. He thereupon prayed an appeal to this court which was granted. Appellant then filed his motion in arrest of judgment, which was overruled on December 1, 1914. On De-

cember 11, 1914, appellant filed his motion to modify the judgment, which was overruled on said date. Proper exceptions were reserved by appellant, to the action of the court in ruling on each of said motions, and each of such rulings are assigned in this court as error. The reasons assigned by appellant for a new trial are that the decision of the court is not sustained by sufficient evidence and is contrary to law.

On the assignment of error, involving the action of the trial court in overruling the motion for a new trial, it is contended that appellee had no right to rely

1.   on the representations of appellant and his agent as to values, or on the promises made by them for the future; that if he did so, it was his own fault, and he cannot, therefore, ask to be relieved from the consequences, as such fact would leave him without remedy.   While it is true, as contended by appellant, that as a rule representations as to values and statements pertaining to the future are not held to be statements of fact which will support an action for fraud, such rule, however, is not a hard or fast one, but yields to exceptions in its application.   In certain circumstances such representations are called affirmations of fact, and may be made the grounds of an action for fraud.   *Manley* v. *Felty* (1896), 146 Ind. 194, 45 N. E. 74; *Culley* v. *Jones* (1904), 164 Ind. 168, 73 N. E. 94; *Boltz* v. *O'Conner* (1909), 45 Ind. App. 178, 90 N. E. 496; *New* v. *Jackson* (1911), 50 Ind. App. 120, 95 N. E. 328; *Ohlwine* v. *Pfaffman* (1912), 52 Ind. App. 357, 100 N. E. 777; *Judy* v. *Jester* (1912), 53 Ind. App. 74, 100 N. E. 15.   The same rule applies as to statements of matter in the future.   *Hartford Life Ins. Co.* v. *Hope* (1907), 40 Ind. App. 354, 81 N. E. 595, 1088.   Whether such representations as to values, or statements

2.   pertaining to the future, are affirmations of fact, is a question to be determined by the court or

jury trying the cause, and such determination is binding on this court, if there be any evidence to sustain the same. *Culley* v. *Jones, supra; Hartford Life Ins. Co.* v. *Hope, supra; New* v. *Jackson, supra; Stauffer* v. *Hulwick* (1911), 176 Ind. 410, 96 N. E. 154, Ann. Cas. 1914A 951. In this case the court heard the evidence in this regard, and evidently found that such representations and statements were affirmations of fact. The evidence is of such a character that we cannot say that the court erred in reaching such conclusion, and hence we are bound thereby.

Appellant also seeks to apply the rule that a purchaser has no right to rely upon the representations of a vendor as to the quality of the property, where

3. he has a reasonable opportunity of examining the same and of judging for himself as to its qualities. *Cagney* v. *Cuson* (1881), 77 Ind. 494. This rule, however, has no application where a party to a contract places a known trust and confidence in the other party and acts on his opinion. In such case any misrepresentation by the party confided in as to a material matter constituting an inducement or motive to the act of the other party and by which an undue advantage is taken of him, is regarded as a fraud against which equity will relieve. *Givan* v. *Masterson* (1898), 152 Ind. 127, 51 N. E. 237; *Ray* v. *Baker* (1905), 165 Ind. 74, 74 N. E. 619; *Grim* v. *Griffith* (1904), 34 Ind. App. 559, 73 N. E. 197; *Calahan* v. *Dunker* (1912), 51 Ind. App. 436, 99 N. E. 1021; *Firebaugh* v. *Trough* (1914), 57 Ind. App. 421, 107 N. E. 301.

It is also contended that the evidence shows that appellee lived on the farm conveyed to him by appellant for over three months, without making any com-

4. plaint, and then sold it back to appellant; that by such acts appellee will be deemed to have

waived any fraud in the first trade and to have ratified the same, and that inasmuch as there is no claim that the last deed made by appellee to appellant ought to be set aside, he cannot recover in this action. The apparent theory of the third paragraph of complaint is that the whole transaction involving the execution of both deeds by appellee to appellant, was carried out in pursuance of a fixed design to defraud appellee. There is evidence to support such a theory and, since the trial court made a general finding in favor of appellee, we would not be justified in holding that any act of appellee alleged to have been induced by appellant or his agent in furtherance of their unlawful purpose served as a waiver of any prior right, or as a ratification of any prior wrong.

Appellant further contends that there is no evidence to support the finding that appellee was damaged in the sum of $600. He bases this contention on the 5. fact that there was no proof as to any damage to the real estate and on the failure to prove that appellant took any of appellee's personal property when he left the state, as alleged in the complaint, and hence that there is no foundation for a judgment against appellant for such amount. If we concede that there is a total absence of proof as to the taking of such property when appellee left the state, still there was ample evidence to support the finding and judgment. The evidence tends to prove that when the first conveyance was made appellant received from appellee about $900 worth of personal property to discharge certain mortgages on the land conveyed to him, but that such mortgages have not been discharged. It appears that appellee received from appellant about $200 worth of personal property when the last conveyance was made, but this still leaves an actual loss to appellee, proper to be considered in assessing damages of more than $600, without considering

any other damages which he may have sustained arising from such fraud. The evidence is ample to sustain the amount of damages assessed.

We recognize the rule that fraud is a question of fact and cannot be inferred as a matter of law; and that it is never presumed, but must be clearly proven

6.  by the party making the charge, as the presumption of law is always against bad faith. Nevertheless the fact of fraud may be inferred from circumstances and need not be proven by direct or positive evidence. *Wallace* v. *Mattice* (1889), 118 Ind. 59, 20 N. E. 497; *Woods* v. *Shearer* (1914), 56 Ind. App. 650, 105 N. E. 917; *Gillispie* v. *Darroch* (1914), 57 Ind. App. 482, 107 N. E. 475; *J. M. Robinson, etc., Co.* v. *Stalcup* (1914), 58 Ind. App. 370, 106 N. E. 395. There was evidence from which the trial court might have

7.  inferred that appellee was not only a young man of limited experience, but one of less than ordinary mental capacity and will power. If so, such fact may have been properly considered in determining the question of fraud. *Tucker* v. *Roach* (1894), 139 Ind. 275, 38 N. E. 822; *Yount* v. *Yount* (1896), 144 Ind. 133, 43 N. E. 136; *Culley* v. *Jones, supra.* There was also evidence from which the court may have inferred that appellee reposed confidence in appellant and his agent, by reason of their more mature years, larger business experience, long acquaintance, and apparent friendship, and this inference may have had its influence in the conclusion reached. The court may have given weight to the evidence which tends to prove that appellant and his agent attempted to conceal from the mother of appellee, with whom he was living, the purpose of their visits to his home; that the agent of appellant, on the day the first trade was consummated, sought to render appellee more pliable in his hands by inducing him to drink intoxicants; that he was so affected thereby that

on reaching home, after the deeds were exchanged, he turned his horse loose in the barn with saddle and bridle on and allowed it to so remain for the night, and that on entering the house he was so stupefied that his mother was unable to induce him to talk; that soon afterwards appellant and his agent, realizing appellee's confidence in them and their influence over him, began to make false statements to appellee, with reference to threatened criminal prosecutions by his creditors and thereby frightened him into a reconveyance of the land to appellant and flight from the state, in order to avoid imprisonment; that at the time of the exchange of land in April, 1913, appellee owned real and personal property of the net value of about $1,800, and as a result of the dealings induced by the alleged fraud, on the part of appellant and his agent, appellee, by July of the same year, was stripped of all his property, except two western horses, an old spring wagon and harness of the probable value of $200. The evidence in this case was almost wholly oral. Much of it was undisputed, and if the court, after hearing all the evidence as well as observing the demeanor of the witnesses on the stand, was satisfied that the preponderance of such evidence established fraud on the part of appellant in procuring the conveyance in question from appellee, and so determined by its finding, we are bound thereby, inasmuch as it clearly appears that there was some evidence to support every material allegation of the complaint.

It may be well to note that some of the representations made and acts done on which appellee relies to establish fraud were made and done by one Charles Rose, as appellant's agent. Appellant denies knowledge as to some of these, but admits that Rose acted as his agent in trading his land to appellee. This being true, appellant was bound by the

acts of his agent, done within the real and apparent scope of his authority. *Wolfe* v. *Pugh, Admx.* (1885), 101 Ind. 293; *Nichols* v. *Colgan* (1892), 130 Ind. 341, 30 N. E. 301; *O. M. Cockrum Co.* v. *Klein* (1905), 165 Ind. 627, 74 N. E. 529; *Beem* v. *Lockhart* (1890), 1 Ind. App. 202, 27 N. E. 239; *Maywood Stock, etc., Co.* v. *Pratt* (1915), 60 Ind. App. 131, 110 N. E. 243.

It is significant that appellant admits in his evidence that he had knowledge that the complaint in this case charged that he and his agent, Rose, had conspired to defraud appellee of his property; that Rose was still residing in Pike county when this suit was filed, and he informed him of the charges made in the complaint against them, but, notwithstanding the seriousness of the charges, he made no effort to secure the attendance of Rose as a witness or to secure his evidence by other means. It has been held that where a party has it within his power to produce a witness, presumably favorably disposed toward him, to explain a transaction, and fails so to do, the presumption is that the testimony if produced would be unfavorable to him. *Indiana Union Traction Co.* v. *Scribner* (1910), 47 Ind. App. 621, 93 N. E. 1014; *Judy* v. *Jester, supra; Hinshaw* v. *State* (1896), 147 Ind. 334, 47 N. E. 157; *Lee* v. *State* (1900), 156 Ind. 541, 60 N. E. 299. It may be said with reason that a like presumption arises where a party knows of such a witness whose testimony might be procured by reasonable effort and makes no effort to secure the same. Where a party thus circumstanced fails to make any effort in that regard, it raises a presumption against him. See authorities last cited, *supra*. The evidence in this case as to such facts, tends strongly to support the decision of the court. We therefore conclude, on a consideration of the whole evidence, that the trial court did not err in overruling appellant's motion for a new trial.

Appellant also assigns as error the action of the court below in overruling his motion in arrest of judgment. The record discloses that such motion was filed 11. after the rendition of the judgment, and at a subsequent term. The court, therefore, did not commit error in overruling the same, since such motion to be available must be filed before judgment is rendered. *Smith* v. *State, ex rel.* (1895), 140 Ind. 343, 39 N. E. 1060; *Blaemire* v. *Barnes* (1909), 173 Ind. 657, 91 N. E. 232; *New Albany, etc., Mills Co.* v. *Senior* (1913), 53 Ind. App. 453, 101 N. E. 1025.

The only remaining error assigned relates to the action of the court below in overruling appellant's motion to modify the judgment. The third paragraph alleges facts on which a judgment for damages was authorized. The evidence sustains the amount assessed. It follows that the court did not err in overruling such motion.

We find no reversible error in the record. Judgment affirmed.

NOTE—Reported in 116 N. E. 17. See under (1) 20 Cyc 20, 51; 20 Cyc 52; (6) 20 Cyc 122, 143; (7) 20 Cyc 117; (9) 2 C. J. 855. Action for fraudulent representation in respect to real estate value, 18 Am. St. 556.